USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/07/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
:
JOSUE MANRIQUE VALLEJO, :
:
                 Petitioner, :      18-CV-5649 (JMF)
:
        -v- :      OPINION AND ORDER
:
THOMAS DECKER, et al., :
:
                 Respondents. :
:
----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Petitioner Josue Manrique Vallejo, a citizen of Honduras, petitions for the writ of habeas corpus, pursuant to Title 28, United States Code, Section 2241, contending that his detention by immigration authorities for almost seventeen months since he received an individualized bond hearing violates his due process rights. (Docket No. 1 ("Pet.")). Respondents Thomas Decker, Kirstjen Nielsen, and Jefferson B. Sessions (collectively, the "Government") argue that, as an alien who has "committed certain criminal or terrorist offenses," Vallejo is subject to mandatory detention pursuant to Title 8, United States Code, Section 1226(c). (Docket No. 15 ("Gov't Br."), at 8-9). In his Petition, Vallejo claims that Section 1226(c) does not authorize his detention and that, even if it does, its application is unconstitutional as to him. (Pet. ¶¶ 70-94). For the following reasons, the Court concludes that Vallejo is detained pursuant to Section 1226(c), but that his detention for nearly seventeen months without an individualized bond hearing violates his due process rights. Accordingly, Vallejo's petition is GRANTED.

## FACTUAL BACKGROUND

      The relevant facts are largely undisputed. Vallejo allegedly first entered the United

States in 1990. (Pet. ¶ 1). Thereafter, he was convicted of several crimes: In 2004, he was convicted in South Carolina of receipt of stolen property; in 2007, he was convicted in South Carolina of shoplifting; and in 2009, he was convicted in New York of driving under the influence of drugs or alcohol. (Pet. ¶ 28). For these three crimes, he was sentenced to pay a fine of $187.95, to serve thirty days in jail, and to spend three years on probation, respectively. (*Id.*).[1] Vallejo was served with a Notice to Appear — the charging document that commences removal proceedings — in 2009, (*see* Docket No. 13, Ex. 1), and received an *in absentia* order of removal in 2010; he was removed to Honduras on January 21, 2011. (Pet. ¶ 29).

Vallejo alleges that, after returning to Honduras, "he was kidnapped, assaulted, interrogated, threatened, and raped by men who wanted to exploit his family's small [business] . . . for illegal purposes." (*Id.* ¶ 30). Accordingly, he "fled Honduras and returned to the United States to find safety." (*Id.*). Specifically, Vallejo reentered the United States on or about May 28, 2012, when he was apprehended at the border and again placed in removal proceedings. (*Id.* ¶ 31). At that time, a Department of Homeland Security ("DHS") officer interviewed Vallejo and determined that he had a "reasonable fear of persecution or torture" if he was removed to Honduras. (*Id.*). Thus, Vallejo was released on an order of supervision. (*Id.*). On December 24, 2015, Vallejo was arrested for driving while intoxicated and aggravated unlicensed operation of a motor vehicle; he pleaded guilty on March 23, 2016, and was sentenced to seven months' imprisonment to be followed by three years of probation. (Docket No. 14 ("Deleon Decl."), at ¶ 25). On September 23, 2016, after serving his term of imprisonment, Vallejo was transferred

---

[1] Vallejo was subsequently sentenced to six months' imprisonment for violating the terms of his probation. (Pet. ¶ 28).

directly into Immigration and Customs Enforcement ("ICE") custody. (Pet. ¶ 31).

Vallejo first appeared with counsel before an immigration judge ("IJ") on December 15, 2016. (Deleon Decl. ¶ 28). After several adjournments, Vallejo appeared again on March 16, 2017, at a hearing in which his counsel filed applications for withholding of removal and protection under the Convention Against Torture. (Pet. ¶ 34). At this hearing, DHS argued that Vallejo was subject to mandatory detention pursuant to Section 1226(c), citing his 2004 and 2007 convictions for receipt of stolen property and shoplifting. (*Id.*). The IJ agreed, and held a bond hearing pursuant to the Second Circuit's since-vacated decision in *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015), *vacated*, 138 S. Ct. 1260 (2018). (Pet. ¶ 34). Citing Vallejo's "numerous arrests as well as the very dangerous driving under the influence offenses," the IJ concluded that DHS had met its burden to show by clear-and-convincing evidence that Vallejo presented a danger to the community. (*See* Docket No. 13, Ex. 4, at 18). And citing Vallejo's failure to comply with orders from various tribunals, the IJ also found that he was a flight risk. (*Id.* at 19). Vallejo reserved appeal, but he did not appeal. (Deleon Decl. ¶ 32).

In the nearly seventeen months since that hearing, Vallejo's case has been continued or adjourned eight times: (1) On March 16, 2017 — following Vallejo's initial bond hearing — the IJ scheduled Vallejo's merits hearing for June 30, 2017, (Pet. ¶ 34); (2) on June 30, 2017, Vallejo requested a determination of his competency, which the IJ scheduled for July 17, 2017 (rejecting Vallejo's request to make findings that very day), (*id.* ¶ 35); (3) thereafter, Vallejo sought an adjournment because of witness unavailability, and the IJ scheduled the next hearing for October 3, 2017, (*id.* ¶ 36); (4) on October 3, 2017, the IJ found Vallejo to be competent and began the merits hearing, but the hearing did not conclude, and the IJ continued the case to

November 28, 2017, (*id.* ¶ 38); (5) without notice, the IJ then adjourned that hearing date to December 26, 2017, the day after Christmas, (*id.* ¶ 39); (6) Vallejo's counsel sought an adjournment of the December 26, 2017 hearing date because he had preexisting plans to be out of state, and the IJ adjourned the hearing to April 17, 2018, (*id.*); (7) at the April 17, 2018 hearing, the IJ heard additional evidence for Vallejo's application, but the proceeding did not conclude, and the IJ continued the case to June 21, 2018, later rejecting Vallejo's request to move the date earlier, (*id.* ¶ 40); and (8) the IJ heard additional testimony on June 21, 2018, but continued it again to September 18, 2018. (*Id.* ¶ 41). In the meantime, Vallejo alleges that his "mental health condition" — which was troubled even before his first removal, (*id.* ¶ 27) — "has deteriorated." (*Id.* ¶ 42). In particular, "[h]e experiences suicidal and paranoid thoughts, including flashbacks to the attack he suffered in Honduras." (*Id.*). With the assistance of social workers at Brooklyn Defender Services (his counsel in this case), he "now has a reentry plan and plan for securing mental health treatment should he be allowed to return to his community of Freeport on Long Island, where he would go back to residing with his family." (*Id.* ¶ 43).

**LEGAL BACKGROUND**

This Court previously addressed the due process rights of an admitted alien detained pursuant to Section 1226(c) in *Young v. Aviles* ("*Young I*"), 99 F. Supp. 3d 443 (S.D.N.Y. 2015), and *Young v. Aviles* ("*Young II*"), No. 15-CV-4545 (JMF), 2015 WL 4579204 (S.D.N.Y. July 29, 2015). In those opinions, the Court concluded, citing *Zadvydas v. Davis*, 533 U.S. 678 (2001), and *Demore v. Kim*, 538 U.S. 510 (2003), that "at some point, detention without a hearing offends the Due Process Clause." *Young I*, 99 F. Supp. 3d at 455. A few months after the Court's decision in *Young II*, the Second Circuit issued its opinion in *Lora*. *See* 804 F.3d 601.

4

In *Lora*, the Second Circuit reached the same conclusion that this Court had reached in *Young I*: that mandatory detention under Section 1226(c) could become so prolonged that it would violate the alien's due process right. *Id.* at 613-14; *see Young I*, 99 F. Supp. 3d at 455. The Second Circuit, however, went one step further: Applying the canon of constitutional avoidance, the Court construed Section 1226(c) to require that an alien be afforded a bail hearing before an immigration judge within six months of his or her detention. *Lora*, 804 F.3d at 616.

The Supreme Court rejected that approach in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). Specifically, the Supreme Court held that the Ninth Circuit had erred in doing what the *Lora* Court did: applying the canon of constitutional avoidance to find that the detention of an alien must, as a statutory matter, be limited to sixth months before a bail hearing is required. The Court observed that "[Section] 1226(c) does not on its face limit the length of the detention it authorizes." *Id.* at 846. The Ninth Circuit's interpretation of that provision to "include an implicit 6-month time limit on the length of mandatory detention," the Court reasoned, "falls far short of a plausible statutory construction." *Id.* (internal quotation marks omitted). Significantly, however, the *Jennings* Court expressly "d[id] not reach" the constitutional question of whether, as the Second Circuit had held in *Lora*, the Due Process Clause prohibits the prolonged detention of an alien. *Id.* at 851. A few weeks after deciding *Jennings*, the Supreme Court granted *certiorari* in *Lora*, vacated the Second Circuit's judgment, and remanded the case to the Second Circuit "for further consideration in light of *Jennings*." 138 S. Ct. 1260. Thereafter, the Second Circuit dismissed the case as moot because the petitioner had been released in the interim. *See* 719 F. App'x 79, 80 (2d Cir. 2018) (summary order).

5

**DISCUSSION**

Vallejo raises two primary challenges to his detention. First, he contends, as a matter of statutory interpretation, that Section 1226(c) does not apply. (*See* Pet. ¶¶ 70-87). Second, he argues that his continued detention without an individualized bond hearing violates his rights under the Due Process Clause of the Fifth Amendment. (*See* Pet. ¶¶ 88-94). The first challenge is easily dismissed, as the Court considered and rejected in *Young I* both of the arguments that Vallejo makes here: namely, that Section 1226(c) — which provides that the "Attorney General shall take into custody any alien who . . . is deportable by reason of having committed any offense . . . when the alien is released," 8 U.S.C. § 1226(c) — does not apply to him because he "has a substantial defense against deportation," (Pet. ¶ 72), and because "he was not placed in detention 'when [he was] released' from the offense triggering his mandatory detention," (Pet. ¶ 80 (quoting 8 U.S.C. § 1226(c)(1)). As the Court noted with respect to the first argument, "'the Supreme Court's decision in *Demore* all but forecloses the argument that the term "is deportable," as used in § 1226(c), means anything other than an alien who *prima facie* qualifies for removal,' regardless of whatever forms of discretionary relief may be available." *Young I*, 99 F. Supp. 3d at 454 (quoting *Gayle v. Johnson*, 4 F. Supp. 3d 692, 707 (D.N.J. 2014)). And as the Court noted with respect to the second, the Board of Immigration Appeals has held that Section 1226(c) applies even where there is a gap between an alien's release from criminal custody and his entry into immigration custody, and that decision is entitled to judicial deference. *See id.* at 446-52 (citing *In re Rojas*, 23 I. & N. Dec. 117 (BIA 2001)).[2]

---

[2] If anything, the case for the Court's holding in *Young I* is even stronger now, as the Second Circuit reached the same conclusion in *Lora*. *See* 804 F.3d at 611-13. Although the Supreme Court vacated *Lora* following *Jennings*, it did not address the *Lora* Court's analysis of the "when . . . released" clause. Accordingly, while not binding on this Court, the analysis

Thus, the Court turns to Vallejo's contention that his continued detention without another individualized bond hearing violates his due process rights. In *Young I*, this Court held that, "at some point, detention without a hearing offends the Due Process Clause." 99 F. Supp. 3d at 455.[3] In *Young I*, the Court considered a number of factors in considering a due process challenge to prolonged detention under Section 1226(c). Those factors included: (1) "the sheer length of the proceedings"; (2) "which party bears responsibility for the prolonged detention"; (3) "whether the continued duration of the detention is finite or near conclusion"; and (4) "the interests served by continued detention." *Id.* (internal quotation marks omitted); *see also Sajous*, 2018 WL 2355766, at *10-11 (identifying five factors relevant to the due process analysis). "The length of the detention is obviously a significant factor, although the sheer length of the proceedings is not alone determinative of reasonableness." *Young II*, 2015 WL 4579204, at *1 (internal quotation marks omitted). The "principal factor considered in constitutional review of detention pending removal proceedings is the degree to which the proceedings have been prolonged by unreasonable government action." *Debel v. Dubois*, No. 13-CV-6028 (LTS), 2014 WL 1689042, at *5 (S.D.N.Y. Apr. 24, 2014). Ultimately, "determining whether detention violates the Due Process Clause requires a fact-dependent inquiry that will vary depending on individual circumstances." *Young II*, 2015 WL 4579204, at *1 (internal quotation marks

---

constitutes "strong persuasive authority." *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *6 (S.D.N.Y. May 23, 2018) (citing *Brown v. Kelly*, 609 F.3d 467 (2d Cir. 2010)).

[3] Notably, the Government concedes that continued detention without an individualized hearing can violate due process, stating that "[i]n an extraordinary case . . . the appropriate safety valve is an as-applied constitutional challenge in an individual habeas action that can take into account the reasons why that case is an outlier in the first place." (Gov't Br. 30).

omitted).[4]

Applying the *Young I* factors here, the Court is compelled to conclude that Vallejo's continued detention without another individualized bond hearing violates his due process rights. First, the "sheer length of the proceedings" since Vallejo's *Lora* hearing on March 16, 2017 — almost seventeen months — is, to put it mildly, significant. *Young II*, 2015 WL 4579204, at *2 (internal quotation marks omitted).[5] In *Zadvydas*, the Court "identified six months of detention as presumptively reasonable," and noted that "Congress previously doubted the constitutionality of detention for more than six months." *Sajous*, 2018 WL 2357266, at *10 (citing *Zadvydas*, 533 U.S. at 701). As a result, the Court observed, "detention that has lasted longer than six months is more likely to be 'unreasonable,' and thus contrary to due process, than detention of less than six months." *Id.* (citing *Zadvydas*, 533 U.S. at 701). In *Young II*, the Court found that detention of eleven months without a bond hearing was unconstitutional. 2015 WL 4579204, at *2. And, in that opinion, the Court observed that "several courts in this Circuit have found periods of detention considerably shorter than [eleven months] to be impermissible." *Id.* at *2 (citing cases); *see also Sajous*, 2018 WL 2357266, at *1 (finding that the Due Process Clause required

---

[4] Vallejo briefly contends that mandatory detention under Section 1226(c) automatically violates due process if it exceeds six months. (Pet. ¶¶ 88-90). That contention is dubious, if only because it is hard to square with the Supreme Court's decision in *Demore*, *see Reid v. Donelan*, 819 F.3d 486, 497 (1st Cir. 2016); *Sajous*, 2018 WL 2355766, at *9-10, but the Court need not resolve it here given the Court's conclusion that Vallejo's circumstances entitle him to a hearing.

[5] At times, Vallejo adverts to the fact that he has been detained for a total of more than twenty-two months. (Pet. ¶ 1; Docket No. 16 ("Pet'r's Reply"), at 1, 3, 5, 10). That said, he appears to concede that the relevant period for purposes of analyzing his as-applied constitutional claim is the period since his *Lora* hearing. (*See* Pet. ¶ 94; Pet'r's Reply 6-7); *see also* Gov't Br. 32 (arguing that the length of detention since Vallejo's "*Lora* bond hearing" is constitutionally permissible)). The Court agrees.

an individualized hearing for detention of over eight months). Thus, the first factor strongly supports Vallejo's petition.

On balance, the second factor — whether the alien is responsible for the delay — cuts in Vallejo's favor as well. The parties' principal dispute regarding Vallejo's as-applied challenge turns on whether Vallejo or the Government is responsible for Vallejo's continued detention. (*See* Gov't Br. 32-33; Pet'r's Reply 11-14). In the Court's view, at least five of the eight delays in Vallejo's proceedings — namely, the first, fourth, fifth, seventh, and eighth adjournments or continuances — are attributable to the Government. After all, Vallejo did not seek any of those delays, and there is no reason, and certainly no constitutionally acceptable reason, proffered for why Vallejo's removal proceedings have been scheduled for only a few hours at a time, with adjournments of a month or more resulting from the inability to complete the proceedings. Vallejo is technically responsible for the other three delays insofar as they were prompted by his own applications, but two of the three — namely, the second adjournment, when Vallejo requested an immediate finding with respect to his competency, but the IJ rejected that request and adjourned for what ended up being four months; and the sixth adjournment, which was requested only after the IJ, without notice, adjourned the hearing to the day after Christmas, when Vallejo's counsel had plans to be out of town — can arguably be attributed to the Government as well (or, at a minimum, do not weigh heavily against Vallejo). In any event, the five delays clearly attributable to the Government resulted in a total of 344 days, or more than eleven months, of detention. By itself, that length of delay is significant.

Further, in considering whether Vallejo or the Government is responsible for the prolonged proceedings, the Court "may examine the record to determine whether the alien

9

sought repeated or unnecessary continuances, or filed frivolous claims and appeals." *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1218 (11th Cir. 2016), *vacated on other grounds*, 890 F.3d 952 (11th Cir. 2018); *see also Sajous*, 2018 WL 2355766, at *11 (observing that "it may be pertinent whether the detained alien has asserted defenses to removal," as the "categorical nature of the detention will become increasingly unreasonable" where the alien asserts a potentially valid defense (internal quotation marks omitted)). Here, Vallejo's withholding of removal application is plainly colorable — and the Government does not suggest otherwise — as a DHS asylum officer already concluded that Vallejo has a "reasonable fear of persecution or torture" if he is removed to Honduras. (Pet. ¶ 31). *Cf. Tkochenko v. Sabol*, 792 F. Supp. 2d 733, 743 (M.D. Pa. 2011) (granting habeas relief to a detained alien in part because "it is evident that [the petitioner] has made a substantial showing that she may prevail on the merits [and] where an immigration judge has found her fears of harm to be credible"). Moreover, there is no basis in the record to conclude that Vallejo "act[ed] in bad faith" or used "delay tactics" in extending his detention. *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 476 (3d Cir. 2015).

Third, the Court finds that Vallejo's detention "will continue for several more months, if not more." *Young II*, 2015 WL 4579204, at *2. Vallejo's next hearing is scheduled for September 18, 2018, (Pet. ¶ 41), at which point he will have been detained for eighteen months since his *Lora* hearing, and past performance suggests strongly that the proceedings are unlikely to conclude on that date. Vallejo is still putting on his case, and DHS "has indicated the possibility that they will call additional witnesses in the proceeding." (*Id.* ¶ 45). Additionally, even if the evidence is fully submitted on that date, there is no guarantee that the IJ will make an immediate decision. And, whatever the IJ's decision, the losing side may appeal as of right. *See*

8 C.F.R. § 1003.1(b); *see also* Letter from Ian Heath Gershengorn, Acting Solicitor Gen., to Hon. Scott S. Harris, Clerk, Supreme Court (Aug. 26, 2016), at 3, *Demore* (No. 01-1491) (noting that the Executive Office of Immigration Review has calculated "an average and median of 382 and 272 days, respectively, for the total completion time in cases where there was an appeal"). In sum, it is likely that Vallejo's detention will approach, if not surpass, two years — and "could easily reach three years." (Pet. ¶ 46). Thus, the third factor weighs in Vallejo's favor. *See Young II*, 2015 WL 4579204, at *2 (finding that the third factor weighed in favor of the petitioner where he would have been detained for fourteen months as of his next hearing date "and, depending on the outcome of the hearing (or whether it even happens on that date), his detention [was] likely to continue").

The final factor — the interests served by continued detention — is a closer question. On the one hand, the IJ's determinations at the March 16, 2017 *Lora* hearing — that Vallejo would pose a danger to the community and a risk of flight if released — suggest that continued detention may well be appropriate.[6] On the other hand, Vallejo contends that "his circumstances

---

[6] At one point in its brief, the Government appears to suggest that Vallejo's due process rights were satisfied by the March 16, 2017 *Lora* hearing. (*See* Gov't Br. 13-14 (among other things, quoting *Goldberg v. Kelly*, 397 U.S. 254, 267 n.14 (1970), for the proposition that "[d]ue process does not, of course, require two hearings")). The Government does not press the point heavily, however, and appears to concede elsewhere (at least tacitly) that whether Vallejo's due process rights call for another hearing requires consideration of the totality of circumstances, including — but not limited to — the fact that Vallejo received a *Lora* hearing. That concession is sound, as the Supreme Court has made clear that due process requires periodic review of detention in civil proceedings. *See, e.g.*, *Jones v. United States*, 463 U.S. 354, 368 (1983) (holding that civil commitment of an insanity acquitee is "subject to periodic review of the patient's suitability for release"); *O'Connor v. Donaldson*, 422 U.S. 563, 574-75 (1975) (holding that, even if civil confinement of a mentally ill person is "initially permissible, it could not constitutionally continue after that basis no longer existed"). In fact, in *Zadvydas*, the Court indicated that periodic review hearings must be available if an alien's prolonged detention continued. See 533 U.S. at 701 (setting forth procedures "for detention to remain reasonable").

11

have changed materially and significantly" in the almost seventeen months since the *Lora* hearing. (Pet. ¶ 54). Those changes "include his diagnosis with serious mental health issues, the worsening of these mental health conditions in detention . . . , development of a comprehensive treatment plan addressing those issues, and filing of a U Visa application for Mr. Vallejo, which establishes a third avenue through which he could obtain lawful status in the U.S. as a crime victim who has cooperated with U.S. law enforcement." (*Id.*; *see also* Pet., Ex. G). Significantly, however, Vallejo does not contend that these changes in circumstance mandate his release. Instead, he merely asks for an opportunity to present evidence of the changes to the IJ, who may well find that his detention is still justified on the basis of danger to the community or risk of flight. In the final analysis, the public interest weighs in favor of granting Vallejo another hearing to ensure that his continued detention is justified and imposes only a "minimal burden" on the Government. *Sajous*, 2018 WL 2357266, at *13.

For all of those reasons, that Court concludes that Vallejo is constitutionally entitled to another individualized bond hearing. One final issue remains: the burden of proof (and who should bear that burden) at Vallejo's hearing. Vallejo seeks an "individualized hearing before a neutral arbitrator at which DHS carries the burden of proof to establish by clear and convincing evidence that [he] poses a flight risk or presents a risk of future violence to the public." (Pet. at 27). By contrast, the Government asserts that Vallejo's hearing should be conducted in accordance with Section 1226(a), in which case he would bear the burden "to demonstrate that continued detention does not serve the statutory purpose." (Gov't Br. 32, 34 n.13). In *Lora*, the Second Circuit followed the Ninth Circuit's decision in *Jennings* and held that Section 1226(c) requires the government to "establish[] by clear and convincing evidence that the immigrant

poses a risk of flight or a risk of danger to the community." 804 F.3d at 616. But the Supreme Court's reversal of the Ninth Circuit in *Jennings* casts some doubt on that holding. The majority in *Jennings* held, albeit as a statutory matter, that Section 1226 does not "even remotely support[]" imposing the clear-and-convincing burden on the Government. *See* 138 S. Ct. at 847. And Justice Breyer, writing in dissent, stated that bond hearings "should take place in accordance with customary rules of procedure and burdens of proof rather than the special rules that the Ninth Circuit imposed." *Id.* at 882 (Breyer, J., dissenting).

Even after *Jennings*, a strong argument can be made that due process requires the Government to show at an initial bond hearing that detention is justified by clear-and-convincing evidence. *See, e.g.*, *Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *10 (S.D.N.Y. July 25, 2018) ("[T]he Court is unpersuaded that *Jennings* has any bearing on the appropriate procedures consistent with due process. . . . [I]mposing a clear and convincing standard would be most consistent with due process."). But the hearing to be held here is not an initial bond hearing. Vallejo has *already* had one bond hearing, at which DHS demonstrated by clear-and-convincing evidence that Vallejo was a flight risk and danger to the community. (*See* Pet. ¶ 34; Gov't Br. 14). That difference is material: Generally speaking, it is not unreasonable to conclude that, in the case of a second detention hearing, the Government's burden should be lower or that the burden should be imposed in the first instance on the detainee to demonstrate changed circumstances. *See, e.g.*, 8 C.F.R. § 1003.19(e) (providing that an alien held pursuant to Section 1226(a), the discretionary detention provision, must show that his or her circumstances have "changed materially" in order to establish the right to a bond *re*determination hearing); *cf.* 18 U.S.C. § 3142(f)(2) (providing that an initial bail hearing in the criminal context may be

13

reopened "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing" on certain issues); *McCleskey v. Zant*, 499 U.S. 467 (1991) (discussing the changing burdens for successive habeas petitions). For that reason, the Court concludes that Vallejo bears the burden in the first instance of showing, by a preponderance of the evidence, that his circumstances have changed materially since his first *Lora* hearing. *See, e.g.*, *Pineda v. Shanahan*, 258 F. Supp. 3d 372, 379 (S.D.N.Y. 2017) (reaching the same conclusion in similar circumstances).

## CONCLUSION

For the reasons stated above, Vallejo's Petition is GRANTED. **Within seven calendar days of the date of this Opinion and Order**, the Government shall take Vallejo before an immigration judge for an individualized bond hearing to determine whether his continued detention is justified. At that hearing, Vallejo shall bear the burden to demonstrate, in the first instance, that his circumstances have changed materially since his first bond hearing. Should Vallejo fail to receive a hearing in that time, the Government shall release Vallejo from detention forthwith.

SO ORDERED.

Dated: August 7, 2018
New York, New York

_____
JESSE M. FURMAN
United States District Judge